# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| PYRAMID DIVERSIFIED SERVICES, INC. d/b/a SIMPLE HR, | ) ) ) | |
| Plaintiff, | ) | NO. CIV-09-622-HE |
| vs. | ) ) | |
| PROVIDENCE PROPERTY & CASUALTY INSURANCE, ET AL., | ) ) ) | |
| Defendants. | ) ) | |
| STATE OF OKLAHOMA ex rel. JOHN DOAK INSURANCE COMMISSIONER. AS RECEIVER FOR PARK AVENUE PROPERTY & CASUALTY INSURANCE COMPANY, | ) ) ) ) ) ) | |
| | ) | NO. CIV-12-0457-HE |
| Plaintiff, | ) | |
| vs. | ) ) | |
| PYRAMID DIVERSIFIED SERVICES, INC., | ) ) ) | |
| Defendant. | ) | |

## ORDER

These two cases involve disputes between various professional employer organizations and the insurance company which provided worker's compensation insurance coverage to them and which is now in receivership. A third party complaint filed in No. CIV-09-622 was resolved earlier, leaving claims and counterclaims asserted by Pyramid Diversified Services, Inc. d/b/a Simple HR ("Pyramid"), the State of Oklahoma, *ex rel.*, John Doak, Insurance Commissioner, as Receiver for Park Avenue Property and Casualty

Insurance Company ("Receiver"), PACA, Inc. and Skilstaf. By order entered on November 14, 2013, the court concluded the Receiver is entitled to summary judgment on his breach of contract claims/counterclaims against Pyramid and on all Pyramid's claims/counterclaims against it, including Pyramid's claims for breach of fiduciary duty, negligence, breach of contract, equitable accounting and declaratory relief. The court also granted Pyramid's motion for summary judgment against PACA in CIV-09-622-HE [Doc. #279] and denied the Receiver's motion to amend. Pyramid then filed two motions to alter judgment and the Receiver filed a motion to amend the judgment and a motion for attorney's fees.[1]

With respect to all motions but the two pertaining to standing [CIV-9-622-HE, Doc. #322, CIV-12-457-HE, Doc. #107], the court has not considered any new arguments asserted by the parties, such as Pyramid's arguments pertaining to case reserves, *see* Doc. #304, p. 3, or Oklahoma's Uniform Insurance Liquidation Act, *see* Doc. #316, p. 141, all of which could and should have been raised earlier. The court's discussion below relates to the parties' elaboration of arguments which were raised previously.

As a threshold matter, it is necessary to consider the issue belatedly raised by Pyramid in one of its motions to alter judgment — whether the Receiver has standing to assert certain of the claims as to which judgment was previously entered in the Receiver's favor. Specifically, Pyramid argues that the Receiver lacks standing to recover for amounts paid by or owed to various state guaranty associations, including $115,350.23 for claims paid directly

---

[1] *The pertinent facts are detailed in the court's November order [Doc. #86] and will not be repeated here.*

2

by those associations and $409,492.65 in case reserves set by them. The court concludes Pyramid's objection based on standing should be rejected.

Pyramid relies on the general principle that standing is a jurisdictional issue which may be raised at any time. While that principle is true in some contexts, Pyramid assumes a far more expansive reach for the idea of jurisdictional standing than is warranted.[2] Standing requirements are of different types. Some are based on Article III of the U.S. Constitution, while others are based on prudential considerations. Northern Laramie Range Alliance v. Fed. Energy Reg. Com., 733 F.3d 1030, 1033 (10th Cir. 2013). Article III standing, rooted in the "case or controversy" requirement of the Constitution, is indeed a jurisdictional requirement and can be raised at any time. United States v. $148,840.00 in U.S. Currency, 521 F.3d 1268, 1273 (10th Cir. 2008). The absence of it prevents the court from acting as to the party or claim in question. However, in addition to constitutional standing, a plaintiff must also satisfy concerns of prudential standing. Northern Laramie Range Alliance, 733 at 1033 ("Some standing requirements are based on Article III of the constitution, and others are based on prudential considerations.") Prudential standing is not jurisdictional in nature and a party may forfeit or waive reliance on it. Hobby Lobby Stores, Inc. v. Sebelius, 723 F.3d 1114, 1154 (10th Cir. 2013).

---

[2]*Pyramid's discussion of the issue is very limited and the Receiver makes no effort to grapple with the nature or effect of standing principles beyond the question of whether the Receiver has a substantive right of recovery. Nonetheless, given what Pyramid asserts is the jurisdictional nature of the objection, the court is obliged to deal with it.*

Here, there is little reason to doubt the presence of Article III standing.[3] As to the bulk of the claims or matters at issue in this case, Pyramid does not challenge standing at all. There is no suggestion that the Receiver does not have, in general, Article III standing to pursue claims on behalf of the insurance company for which he has been appointed receiver. Rather, Pyramid challenges whether the Receiver has standing to pursue certain classes of claims which it says actually belong to the various state guaranty associations. That argument is in the nature of one that has been recognized as involving prudential, rather than Article III, standing. "In addition to the constitutional requirements, Petitioners 'must also satisfy the following set of prudential principles: (1) [petitioners] generally must assert [their] own legal rights . . . ." <u>Wyoming v. U.S. Dept. of Interior</u>, 674 F.3d, 1230-31. Pyramid's standing argument is thus one of prudential standing and, as noted above, it is subject to forfeit or waiver.[4]

The court concludes Pyramid has forfeited or waived its ability to now assert a standing objection based on whether the Receiver owns all of the claims he is asserting. As

---

[3]*To have Article III standing, a party must demonstrate (i) an injury in fact that is both concrete and particularized, as well as actual and imminent, (ii) an injury that is traceable to the conduct complained of, and (iii) an injury that is redressable by the court.* <u>Wyoming v. U.S. Dept. of Interior</u>, *674 F.3d 1220, 1230 (10th Cir. 2012).*

[4]*See also 6A Charles Alan Wright, et al., Federal Practice and Procedure § 1542 (3d ed. 2013), discussing the interplay between questions of real party in interest and prudential standing: "However, this latter standing requirement typically is deemed a prudential, rather than a constitutional, one and has been interpreted by the Supreme Court as being satisfied when 'the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question.'" (quoting* <u>Ass'n of Data Processing Serv. Orgs., Inc. v. Camp</u>, *397 U.S. 150, 153 (1970)).*

noted above, its assertion of the argument is quite belated. There was no suggestion in the summary judgment briefing or other pre-judgment proceedings that any standing issue existed. There was no reference to standing in Pyramid's post-judgment motion filed after the entry of judgment.[5] The first mention of standing came some ten weeks after entry of judgment, in its second or supplemental post-judgment motion. Given the prudential nature of the standard Pyramid seeks to invoke, it is simply too late. Among other things, Pyramid's objection is essentially the same as a real-party-in-interest objection based on Fed.R.Civ.P. 17, which is subject to waiver. FDIC v. Bachman, 894 F.2d 1233, 1236 (10th Cir. 1990). Moreover, if the matter is viewed as a judicial mistake rather than mistake by the parties, Pyramid's motion, viewed as one to correct the mistake, is untimely. A mistake of substantive law may be challenged under Fed.R.Civ.P 60(b)(1), but the motion must be filed within the time for appeal, i.e. 30 days from judgment. Cashner v. Freedom Stores Inc., 98 F.3d 572, 578 (10th Cir. 1996). This motion was not. Pyramid's suggestion that Rule 60(b)(4) (and its more forgiving time limit) applies is unpersuasive. That rule allows relief from judgment where the judgment is void. However, as noted above, the issues Pyramid now raises are matters of prudential, not jurisdictional, standing which would not render void an otherwise valid judgment.

In any event, the court concludes Pyramid has waived any objection it had based on

---

[5]*Judgment was entered on November 26, 2013 [Doc. #303]. Pyramid's motion to alter or amend judgment was filed December 6, 2013 [Doc. #304]. Its motion raising the standing issue [Doc. #322] was filed February 5, 2014.*

the standing argument it now offers.[6] Its motion to alter judgment based on the Receiver's claimed lack of standing will be denied.

In its motion to amend the judgment, the Receiver challenges the court's decision that the merger clauses in the 2005-2007 insurance policies preclude its recovery of the incurred but not reported reserves ("IBNR"). The court had determined that, because of the merger clauses and because the parties' annual agreements or proposals pertaining to coverage for 2005-2007 were not referenced in or made part of the policies by endorsement, the agreements' provisions pertaining to IBNR were unenforceable. If the court does not alter its decision, the Receiver asserts that Pyramid owes it an additional $5,479,251 in premiums because it claims the agreements, but not the policies, provide for a deductible discount on premiums.

Having again reviewed the agreements and the policies, the court reconsiders its decision and now concludes the Receiver is entitled to recover IBNR for the 2006 and 2007 policy years. The agreements for those two years contain the following language:

> This proposal ... will constitute a legal agreement except that it will be qualified in its entirety by more detailed and additional terms and provisions contained in a formal Policy to be issued by Us. To the extent there is any

---

[6]*It is far from clear that Pyramid's standing objection would have prevailed even if timely raised. See generally 13A Charles Alan Wright, et al., Federal Practice and Procedure § 3531.9 n.4 (3d ed. 2013)"A party who has Article III standing may invoke the rights of others on showing a close relationship with the person who possesses the right and also showing some hindrance to that person's assertion of the right." Whether the relationships arising out of the state schemes for insolvency receiverships and guaranty associations, coupled with the practical difficulties of forcing the guaranty associations to separately pursue the disputed amounts as they accrue, make out the necessary showing presents what appears to be an open question. However, in light of the waiver, it is unnecessary to resolve the question here.*

inconsistency between the terms or provisions of this Proposal and the Policy, the Policy supersedes the Proposal. The terms and provisions of this Proposal shall survive the issuance of the Policy. . . . Except to the extent supplemented by the Policy, this Proposal, together with the Exhibits hereto, constitutes the entire agreement and understanding of the parties in respect of the subject matter hereof . . . .

Doc. #310-10, pp. 1,6. The parties clearly intended to be bound by the agreements except to the extent their terms conflicted with the policies that were subsequently issued.[7] Similar language is not, though, found in the 2005 proposal, which provides that "[a]t any time prior to binding and issuance of a written and authorized Certificate of Coverage, Providence Property and Casualty Company reserves the right to withdraw this proposal." Doc. #310-9, p. 1. Also missing from the 2005 proposal is any reference to Pyramid's responsibility for IBNR. The court is not persuaded that its initial determination that the Receiver is not entitled to recover IBNR was erroneous with respect to the 2005 policy year.

A different conclusion is reached as to policy years 2006 and 2007. Pyramid contends the terms of the 2006 and 2007 agreements pertaining to IBNR are not enforceable because they are inconsistent with the payment obligations imposed by the policies. Pyramid focuses on language in the deductible endorsements specifying that it would "reimburse" the insurer (up to the deductible amount) the total of the actual claims payments of "benefits under Part

---

[7]*In light of the express "survival" language in the 2006 and 2007 agreements, which the court's earlier order failed to appropriately take into account, it is unnecessary to belabor the question of whether* Consedine v. Personnel Mgmt., *539 Fed.Appx. 565 (5th Cir. 2013), relied on by the Receiver and distinguished by the court in its November 14, 2013, order, is or is not factually distinct. Suffice it to say, the result now reached by the court is consistent with the Fifth Circuit's effort to reconcile the fine points of the "merger" doctrine with the manifest intent of the parties, as shown by "program" or other documents, in largely parallel circumstances.*

7

One (Workers Compensation Insurance)," plus other identified benefits and damages with no mention of IBNR. Doc. #310-2, p. 70. Because IBNR claims estimates "have yet to be paid out as claims," Pyramid asserts they "are not amounts that can be <u>reimbursed</u> for actual claims payments." Doc. #316, p. 8. The court agrees. However, because they are not "reimbursable" amounts, the IBNR reserves are not covered by – either excluded or expressly allowed by – the deductible endorsement. In other words, the policy only covers the parties' obligations as to payments the insurer has already actually made. It does not address Pyramid's obligation for amounts that the insurer may have to, but has not yet, paid. Therefore the agreements, insofar as they obligate Pyramid to pay the insurer for its estimated future payments on claims/losses, do not conflict with, but rather supplement, the policy provisions and are enforceable.[8]

The Receiver's argument that Pyramid is not entitled to premium discounts for policy year 2005 is not persuasive.[9] The policy clearly refers to deductible credits. *E.g.*, Doc. No., 310-1, p. 4.

The Receiver's motion to amend the judgment will be granted as to its ability to

---

[8]*The agreements cap the amount for which Pyramid could be held liable for "Developed Losses," defined to include "Reported Losses, Incurred But Not Reported Losses and Allocated Loss Adjusting Expenses." Doc. #310-11, p. 9 (Glossary). They provide that "[s]uch losses are subject to the Deductible amount for each and every loss." Id. Pyramid has not asserted that the Receiver is seeking to recover sums in excess of the deductible amount.*

[9]*This argument no longer pertains to policy years 2006 and 2007, as the Receiver urged the argument only to the extent it was not permitted to recover IBNR reserves. See Doc. #310, p. 11. It would fail as to those years, even if pursued, as the policies reflect Pyramid's entitlement to a credit. See Doc. #310-2 (Total Estimated Annual Premium).*

recover IBNR reserves plus interest for policy years 2006 and 2007, and denied as to the IBNR reserves for policy year 2005 and Pyramid's entitlement to deductible premium discounts for that year.

In its motion to alter the judgment, Pyramid offers nothing materially different from what it urged initially. The court is not persuaded its original decision was wrong. Pyramid's motion will be denied.

The Receiver also filed a motion requesting oral argument on Pyramid's motions attacking the judgment. As the court has concluded the motions can be resolved on the briefs, the request for oral argument will be denied.

The remaining motions consist of the Receiver's request for attorney's fees. The Receiver claims that it is entitled to recover fees pursuant to 12 Okla. Stat. § 936(a), "as the prevailing party for the deductible reimbursements recovered pursuant to statements of account and account stated." Doc. #307, p.4. Recovery of its fees also is authorized by the statute, the Receiver argues, "in defense of Pyramid's claim for recovery on the promissory noted issued by PACA, Inc. in favor of Pyramid." *Id.* Pyramid responds that the Oklahoma courts have narrowly construed § 936 to allow recovery for fees in situations where the lawsuit is based on a dispute regarding labor and services rendered.

The fee statute provides in pertinent part:

A. In any civil action to recover for labor or services rendered, or on an open account, a statement of account, account stated, note, bill, negotiable instrument, or contract relating to the purchase or sale of goods, wares, or merchandise, unless otherwise provided by law or the contract which is the subject of the action, the prevailing party shall be allowed a reasonable

9

attorney fee to be set by the court, to be taxed and collected as costs.

12 Okla. Stat. 936(A). The Receiver's recovery of the deductible reimbursements does not fall within the scope of the statute. The Oklahoma Supreme Court has "reject[ed] the assertion that § 936 applies to an action based upon an insurance contract and brought for the purpose of collecting an insurance premium." State ex rel. State Ins. Fund v. Great Plains Care Ctr., Inc., 78 P.3d 83, 90 (Okla. 2003). *See* State ex rel. State Ins. Fund v. Accord Human Res., Inc., 82 P.3d 1015, 1017-18 (2003)( "The phrase 'account stated' refers to a type of contract where an agreement on a balance owed becomes a new and independent obligation that supercedes and merges the prior contractual obligation.). That conclusion precludes the Receiver from receiving a fee based on its recovery of deductible reimbursements.

The Receiver's attempt to stretch the statute to authorize its recovery of attorney's fees for defending against Pyramid's claim for "a credit for monies it paid to PACA, Inc., including a promissory note from PACA to Pyramid, against amounts Pyramid owed the Receiver." Doc. #307, p.2 , " is similarly ineffective. While there was a promissory note somewhere in the mix, Pyramid was not suing to recover on a note.

Having determined that § 12 Okla. Stat. § 939 does not authorize the attorney's fee award sought by the Receiver, the Receiver's motions seeking attorney's fees will be denied.

Finally, the court previously entered an order directing the parties to show cause why Case Nos. CIV-09-0622-HE and CIV-12-0457-HE should not be consolidated. Only the Receiver responded. He stated that he was generally not opposed to consolidation noting

that, with one exception – a motion for summary judgment filed by Pyramid Diversified Services, Inc. against PACA, a party in CIV-09-0622-HE but not CIV-12-0457 – the pleadings were the same. The Receiver did, though, ask the court to wait to consolidate the cases until a decision was made regarding his standing to assert certain claims as that might, he argues, necessitate a remand of the 2012 case. As that issue has been resolved in this order, there is no reason to delay consolidation.

Accordingly, Case Nos. CIV-09-0622-HE and CIV-12-0457-HE are **CONSOLIDATED** for all purposes. Case No. CIV-09-0622-HE shall be the surviving case and any future filings shall be under that number.

The motions to alter judgment filed by Pyramid in CIV-09-622-HE [Doc. Nos. 304, 322] and in CIV-12-457-HE [Doc. Nos. 89, 107 ] are **DENIED**. The motions to amend/correct judgment filed by the Receiver in CIV-09-622-HE [Doc. #310] and in CIV-12-457-HE [Doc. # 95] are **GRANTED in part and DENIED in part**. The Receiver's motions for a hearing, CIV-09-622-HE [Doc.#333] and CIV-12-457-HE [Doc. # 118 ] are **DENIED**. Finally, the Receiver's motions for attorney's fees, CIV-09-622-HE [Doc.#307] and CIV-12-457-HE [Doc. # 92] are **DENIED.**

The parties are directed to submit a joint proposed judgment within ten days that reflects the court's decision that the Receiver can recover IBNR reserves plus interest for the 2006 and 2007 policy years.

**IT IS SO ORDERED**.

Dated this 21st day of April, 2014.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE